# EXHIBIT A

AMERICAN ARBITRATION ASSOCIATION
MULTIEMPLOYER PENSION PLAN ARBITRATION RULES FOR
WITHDRAWAL LIABILITY DISPUTES

| | |
|---|---|
| In the Matter of an Arbitration Between<br><br>**CONSUMERS CONCRETE CORP.**<br>Claimant<br>- and -<br><br>**CENTRAL STATES, SOUTHEAST AND SOUTHWEST AREAS PENSION FUND**<br>Respondent | **AWARD & OPINION**<br><br>NB4003<br>AAA 01-19-0004-2227 |

**Arbitrator:**     **Norman Brand, Esq.**

**Appearances:**

    **For** Consumer Concrete Corp.
    Conn, Maciel & Carey
    **By Mark M. Trapp, Esq.**

    **For** Central States, Southeast And Southwest Areas
    Pension Fund
    **By Anthony E. Napoli, Esq.**

**Date: March 31, 2023**

1

**Background**

On March 13, 2019, Central States, Southeast And Southwest Areas Pension Fund ("Fund") sent Consumers Concrete Corporation ("Company" or "Consumers") a Notice and Demand for partial withdrawal liability, asserting it had effected a partial withdrawal on December 31, 2017. On September 19, 2019, the Fund sent the Company a Notice and Demand for complete withdrawal liability. The Company timely requested review and arbitration for each assessment. The parties agreed to consolidate the issues the Company raised for both the partial and complete withdrawal in a single arbitration. The Arbitrator held a case management conference on February 4, 2020 and opened discovery. The Arbitrator resolved discovery disputes and granted the Fund's motion to bar expert testimony on April 28, 2022.

The Arbitrator held a hearing in Rosemont, Illinois on October 28, 2022. Prior to the hearing the parties stipulated to 37 Joint exhibits and 76 facts. The parties agreed: "The Fund has never changed or altered the 2017 Partial assessment in any way since it was issued." (Stip. Fact 30) Counsel for Consumers asserted a hearing was necessary because: "there is a factual dispute as to whether the credit (2017 Prior Partial Credit) was actually reduced." (Tr. 5:15-16) At the hearing it became clear there is no factual dispute. The only question is the legal one, described below. Both parties were represented at the hearing and neither objected to the proceedings. A stenographic reporter recorded the hearing. At the close of the hearing the parties asked to file post-hearing briefs. The Arbitrator received reply briefs and exhibits from AAA on March 7, 2023.

**Issues**

<u>2017 Partial Withdrawal</u>

Consumers does not seek any change to the 2017 Monthly Payment Schedule. It disputes only the propriety of the "billing charges" the Fund assessed. (Stip. Fact 69)

<u>2019 Complete Withdrawal</u>

Consumers disagrees with the Fund's calculation of the 2017 Prior Partial Credit, when the credit should be applied, and whether billing charges are statutorily impermissible.

> The Fund asserts that the 2017 Prior Partial Credit should be applied as one of the series of steps set forth under 29 U.S.C. § 1381 (b)(1). When it calculated the 2019 Complete Assessment, the Fund performed the following functions and in the following order: (a) first, calculating the amount of UVBs allocable to the employer; (b) second, applying the 2017 Prior Partial Credit; and (c) third, applying the 20-year limitation in payments. (Stip. Fact 67)
>
> Consumers asserts that the 2017 Prior Partial Credit must be applied after completing the steps to determine the amount of withdrawal liability under 29 U.S.C. § 1381(b)(1). Consumers asserts that the 2019 Complete Assessment should be calculated by calculating the amount of UVBs allocable to the employer; then applying the four sequential adjustments under 29 U.S.C. § 1381 (b)(1) to determine the withdrawal liability as follows: (a) first, there is no de minimis adjustment involved, (b) next, because this is a complete withdrawal, there is no adjustment at step two; (c) then, the 20-year cap limits the allocable amount of unfunded vested benefits; and (d) finally, there is no 29 U.S.C. §1405 adjustment. Once the amount of withdrawal liability is determined, Consumers asserts the 2017 Prior Partial Credit is applied to reduce that amount. (Stip. Fact 68)
>
> The parties agree that if the Arbitrator finds that the 2017 Prior Partial Credit should be applied *before* applying the 20-year limitation on payments, then the total withdrawal liability is payable in 240 monthly payments of

3

> $50,736.80, with the first such monthly payment due on October 1, 2019 and the last such payment due on September 1, 2039, as set forth in the 2019 Complete Assessment. In this case, Consumers would continue to be required to make payments in accordance with the 2019 Monthly Payment Schedule. In addition, Consumers contests the inclusion of the "billing charges." (Stip. Fact 72)

Thus, in accordance with the stipulations of the parties, there is a potentially dispositive legal issue:

1. Did the Fund act in accordance with ERISA § 4201(b)(1) when it applied the 2017 Prior Partial Credit before applying the 20-year limitation of payments? If so, the parties agree the payment schedules for both the 2017 Partial Withdrawal and the 2019 Complete Withdrawal are correct.

2. If not, the parties disagree about the calculation of the 2017 Prior Partial Credit and the resulting complete withdrawal liability. (Stip Facts 50-65)

3. In either case, Consumers asserts the "billing charges", which "constitute interest amounts to account for the fact that payments are made monthly rather than quarterly", are improper on both the partial and complete withdrawal liability schedules. (Stip Fact 40, 41)


**Statutory References**

**9 U.S.C. § 1381(b)(1) ERISA Section 4201[1]**

(a) If an employer withdraws from a in a complete withdrawal or a partial withdrawal, then the employer is liable to the plan in the amount determined under this part to be the withdrawal liability.

(b) For purposes of subsection (a)—

---

[1] ERISA sections are indicated in parentheses throughout.

4

**(1)** The withdrawal liability of an employer to a plan is the amount determined under section 1391 (4211) of this title to be the allocable amount of unfunded vested benefits, adjusted—

**(A)** first, by any de minimis reduction applicable under section 1389 (4209) of this title,

**(B)** next, in the case of a partial withdrawal, in accordance with section 1386 (4206) of this title,

**(C)** then, to the extent necessary to reflect the limitation on annual payments under section 1399(c)(1)(B) (4219(c)(1)(B) of this title, and

**(D)** finally, in accordance with section 1405 (4225) of this title.

**(2)** The term "complete withdrawal" means a complete withdrawal described in section 1383 (4203)of this title.

**(3)** The term "partial withdrawal" means a partial withdrawal described in section 1385 (4205) of this title.

### 9 U.S.C. § 1386(b)(1) ERISA Section 4206(b)(1)

**(b) (1)** In the case of an employer that has withdrawal liability for a partial withdrawal from a plan, any withdrawal liability of that employer for a partial or complete withdrawal from that plan in a subsequent plan year shall be reduced by the amount of any partial withdrawal liability (reduced by any abatement or reduction of such liability) of the employer with respect to the plan for a previous plan year.

**(2)** The corporation shall prescribe such regulations as may be necessary to provide for proper adjustments in the reduction provided by paragraph (1) for—

### Positions of the parties

Consumers, which has the burden of proof (ERISA §4221(3)(A)), makes five

arguments.

First, it asserts ERISA §4201(**b**)(1)(B) applies only when a Fund is calculating

partial withdrawal liability. The statute says specifically that it applies "in the case of

a partial withdrawal…." This "partial withdrawal" language limits the meaning of the

5

subsequent phrase "in accordance with section 4206." That is, <u>only</u> ERISA §4206(a), which describes the calculation of "the amount of an employer's liability for a partial withdrawal", is an adjustment under section 4201(**b**)(1)(B). ERISA §4206(**b**)(**1**), which describes the <u>credit</u> to be applied for a prior partial withdrawal, when calculating a subsequent partial or complete withdrawal, is <u>not</u> an adjustment under section 4201(**b**)(1)(B). Where, as here, a Fund is calculating complete withdrawal liability, section 4201(**b**)(**1**)(B) allows no adjustment for prior partial credit .

Second, Consumers argues that the section 4206(**b**)(**1**) credit for prior partial withdrawal liability can only be applied after applying the section 4201(**b**)(**1**)(C) limitation on annual payments.[2] Because section 4201(**b**)(**1**)(B) does not apply when determining complete withdrawal liability, when to apply the 4206(**b**)(**1**) credit is determined by the language of that section. It applies the credit to: "any withdrawal liability of that employer for a partial or complete withdrawal from that plan in a subsequent plan year…" Consumers argues that withdrawal liability does not exist until after making all the adjustments in section 4201(**b**)(**1**). Section 4201(**a**) makes the employer liable to the plan for the  "amount determined under this part to be the withdrawal liability." That determination, it says, involves the sequential steps in section 4201(**b**)(**1**). Only after going through those steps is the "allocable amount of unfunded vested benefits" converted into withdrawal liability. Thus, the partial withdrawal credit must be applied after the limitation of section 4219(c)(1)(B) has turned the "allocable amount of unfunded vested benefits" into withdrawal liability.

---

[2] The final potential adjustment, under section 4225, is not applicable.

6

Third, Consumers asserts that for forty years the PBGC has supported its position that the partial withdrawal liability credit in section 4206**(b)(1)** is applied only after making all the adjustments in section 4201**(b)(1).** It cites PBGC Opinion Letters 82-35 and 85-4. It argues that the PBGC promulgated regulations under ERISA §4206**(b)(2)**, which ensure the subsequent year liability "properly reflects the employer's liability with respect to the plan." These regulations provide for a credit against "the new withdrawal liability." Thus, the Opinion Letters and promulgated rules require applying the credit only after making all the adjustments in section 4201**(b)(1)**. Consumers also cites the 2016 Blue Book, of questions and answers from the annual Enrolled Actuaries Program Committee meeting with PBGC staff.[3]

Fourth, Consumers asserts that the accuracy of its statutory interpretation is not affected by a District Court's "purported expansion" of section 4201**(b)(1)**. That court said:

> Here, even though the Fund was calculating Quad's 2010 complete withdrawal, the entire matter was nevertheless a "case of partial withdrawal" because Quad partially withdrew from the Fund in 2009. In other words, the word "case" refers not just to the particular assessment being calculated (as Quad contends), but more broadly to any situation where a withdrawal assessment is affected by the existence of a partial withdrawal. *GCIU-Employer Ret. Fund v. Quad/Graphics, Inc.*, 250 F. Supp. 3d 551, 563 (C.D. Cal. 2017)

---

[3] That document contains the following preface:
The following pages set forth the questions posed to staff of the Pension Benefit Guaranty Corporation at discussions on March 3, 2016, with representatives of the Enrolled Actuaries Program Committee. Included also are summaries of the responses to those questions. The summary responses to the questions are intended to reflect as accurately as possible the statements made by the government representatives. However, those responses are merely the current views of the individuals and do not represent the positions of the Pension Benefit Guaranty Corporation or of any other governmental agency and cannot be relied upon by any person for any purpose. Moreover, PBGC has not in any way approved this booklet or reviewed it to determine whether the statements herein are accurate or complete.
https://www.pbgc.gov/sites/default/files/legacy/docs/2016bluebook.pdf (last visited March 26, 2023)
The Arbitrator will not consider any alleged support for Consumers' position in the Blue Book.

7

Consumers dismisses the court's statement as an uninformed attempt to rewrite clear and unambiguous language so that "partial withdrawal" includes "complete withdrawal." It argues that the heading of section 4206 confirms that only section 4206(a) applies to a "partial withdrawal" adjustment under section 4201(**b**)(1)(B).[4] It asserts the District Court erred further in saying:

> [t]he partial withdrawal credit applies to withdrawal liability assessed in subsequent years *regardless* whether the withdrawal in those subsequent years is partial or complete. § 1386(b)(1). Under Quad's reasoning, however, § 1381(b)(1)(B) would refer to the partial withdrawal credit if the subsequent years were a partial withdrawal—but not if they were complete withdrawals. This makes no sense. Quad gives no reason why the sequence in which the partial withdrawal credit is applied should differ based on whether the withdrawal in the subsequent year is partial or complete. *GCIU-Employer Ret. Fund v. Quad/Graphics, Inc.*, 250 F. Supp. 3d 551, 563 (C.D. Cal. 2017)

Consumers asserts the brief time spent on partial withdrawal credit during oral argument demonstrates that the question of when the partial withdrawal credit was applied was not the primary issue. That was whether the withdrawal was in 2010 or 2011. Thus, the court likely made this error because Quad did not pay sufficient attention to arguing when the partial withdrawal credit was taken.

Fifth, Consumers dismisses the Fund's reliance on the Ninth Circuit's opinion that affirms the District Court's analysis that: 1) section 4201(**b**)(**1**)(B) applies to a complete withdrawal that was preceded by a partial withdrawal; and, 2) the partial withdrawal credit is applied before the 20 year limitation. *GCIU-Employer Ret. Fund v. Quad/Graphics, Inc.*, 909 F.3d 1214 (9th Cir. 2018) Consumers asserts the Court contradicts itself, makes "individually accurate (or nearly accurate) statements of law in

---

[4] The statute, as passed, gives section 1386 the heading "Adjustment for Partial Withdrawal". (Fund Reply Brief Exh. B) This difference between what Congress passed and how the law was codified renders arguments about the meaning of the statutory language based on section headings unpersuasive.

8

support of a patently incorrect holding", and "got it wrong' when it asserted the 20 year cap forgives debt.[5] In any event, it notes (correctly) that the Ninth Circuit opinion is not binding in the 6th Circuit or 7th Circuit where an appeal of the Arbitrator's Award would be taken.

The Fund makes four arguments. First, the Fund asserts it followed the order of adjustments in section 4201(**b**)(**1**). It applied the adjustments sequentially. In so doing, it applied the adjustment required by section 4201(**b**)(**1**)(B) before the adjustment required by section 4201(**b**)(**1**)(C). That is, it applied the prior partial withdrawal credit before applying the 20 year limitation of section 4219(c)(1)(B).

Second, ERISA §4201(**b**)(**1**)(B) does not limit the required adjustment to only ERISA §4206(**a**) – which provides the calculation for a partial withdrawal. It requires an adjustment "in accordance with section 4206," which has a second part. Section 4206(**b**) requires a credit for prior partial withdrawals, and directs the calculation of that credit. If Congress intended for plans to apply only section 4206(a), it would have said so. In the very next section, ERISA §4201(**b**)(**1**)(C) it refers explicitly to 4219(c)(1)(B). When Congress meant to limit the reference to a portion of a statutory section it knew how to do so.

Third, interpreting section 4201(**b**)(**1**)(B) to refer to all partial withdrawals avoids an absurd interpretation. As the District Court noted:

> Quad argues that the partial withdrawal credit does not fall under §1381(b)(1)(B) because this does not concern a "case" of partial withdrawal—rather, it concerns a "case" of complete withdrawal to which one applies the partial withdrawal *credit*. The Court finds this unconvincing for multiple reasons. First, the partial withdrawal credit applies to

---

[5] It dismisses as dicta the Supreme Court's statement that " the statute forgives all debt outstanding after 20 years" *Milwaukee Brewery Workers' Pension Plan v. Jos. Schlitz Brewing Co.*, 513 U.S. 414, 419, (1995)

9

>withdrawal liability assessed in subsequent years *regardless* whether the withdrawal in those subsequent years is partial or complete. § 1386(b)(1). Under Quad's reasoning, however, § 1381(b)(1)(B) would refer to the partial withdrawal credit if the subsequent years were a partial withdrawal—but not if they were complete withdrawals. This makes no sense. Quad gives no reason why the sequence in which the partial withdrawal credit is applied should differ based on whether the withdrawal in the subsequent year is partial or complete. *GCIU-Employer Ret. Fund v. Quad/Graphics, Inc.*, 250 F. Supp. 3d 551, 563 (C.D. Cal. 2017)[*Quad I*]

The Fund asserts it properly adjusted the complete withdrawal liability by the 2017 Prior Partial Credit when it applied section 4201(**b**)(**1**)(B).

Fourth, the Fund asserts an arbitrator, the District Court, and the Ninth Circuit explicitly rejected Claimant's interpretation, finding the statute unambiguously requires applying the credit for a prior partial withdrawal before the adjustment for the 20 year limitation on payments. *GCIU-Employer Ret. Fund v. Quad/Graphics, Inc.*, 909 F.3d 1214 (9th Cir. 2018)[*Quad II*] The Fund provides Quad's brief in the Ninth Circuit to show *Quad* made the same arguments about the inapplicability of section 4201(**b**)(**1**)(B) to a complete withdrawal, and the error of applying the partial withdrawal credit before all adjustments are made and "withdrawal liability" comes into existence. The Ninth Circuit found neither argument convincing.

Additionally, the Ninth Circuit explicitly rejected the PBGC's statutory interpretations in the Opinion Letters that Consumers cites here, finding:

>"[i]nterpretations such as those in opinion letters—like interpretations contained in policy statements, agency manuals, and enforcement guidelines, all of which lack the force of law—do not warrant *Chevron*-style deference." [citations omitted] *GCIU-Employer Ret. Fund v. Quad/Graphics, Inc.*, 909 F.3d 1214, 1218 (9th Cir. 2018)

10

In applying "*Skidmore* review," the Court found: "Neither agency interpretation is persuasive." *GCIU-Employer Ret. Fund v. Quad/Graphics, Inc.*, 909 F.3d 1214, 1219 (9th Cir. 2018)

The Arbitrator finds there is no merit to Consumers argument that the Fund should have applied the 2017 Prior Partial Credit after applying the 20 year limitation. There are three reasons for this finding.

First, the plain language of the statute requires applying the section 4206(**b**)(**1**) 2017 Prior Partial Credit as a section 4201(**b**)(**1**)(B) adjustment. It is an adjustment "in the case of a partial withdrawal" because it is applying a prior partial withdrawal credit. As the court notes in *Quad I*, it makes no sense to argue that an adjustment for a prior partial withdrawal must be taken when calculating a new partial withdrawal but not when calculating a new complete withdrawal. Section 4201(**b**)(**1**) provides a specific sequence for adjusting defined withdrawal liability to determine the withdrawing employer's liability to the plan. Consumers provides no credible argument that Congress deliberately omitted the prior partial credit from the sequence of adjustments in section 4201(**b**)(**1**) intending it to be applied after all the other adjustments. Rather, the reference to section 4206 indicates the opposite Congressional intent. As demonstrated in the very next section, 4201(**b**)(**1**)(C), Congress knew how to refer to a specific portion of a statute when it intended to do so. It did not do so in section 4201(**b**)(**1**)(B). That provision refers to the entirety of section 4206, indicating that both sections (**a**) and (**b**) apply.

Second, the application of the 2017 Prior Partial Credit at section 4201(**b**)(**1**)(B) does not render the term "withdrawal liability" in section 4206(**b**)(**1**) surplusage, as

11

Consumers argues. It only does so if Consumers' unique interpretation of section 4201 were correct. It is not. Section 4201(**b**)(**1**) provides a sequence for applying adjustments to withdrawal liability in determining the withdrawal liability for which the withdrawing employer is liable to the plan. Consumer argues that because withdrawal liability is what the plan can demand and collect from a withdrawing employer, no withdrawal liability <u>exists</u> until after the plan makes all the adjustments in 4201(**b**)(**1**). While Consumers expends great effort to interpret the statute that way, there is a simpler interpretation. Section 4201(**b**)(**1**) defines withdrawal liability. In an independent clause it says: "The withdrawal liability of an employer to a plan is the amount determined under section 4211 to be the allocable amount of unfunded vested benefits… " That is withdrawal liability. The withdrawal liability defined in the independent clause, however, is "adjusted" by the four subsections that follow. ERISA §4201(**a**) says the withdrawing employer "is liable to the plan in the amount *determined under this part to be the withdrawal liability*." What remains after adjustments to the withdrawal liability defined in the independent clause is the amount "determined to be the withdrawal liability" for which the employer is liable to the plan. Thus, while the employer's allocable amount of unfunded vested benefits is its withdrawal liability, that is not the amount for which the employer is liable to the plan. Only the amount *determined* after the adjustments in section 4201(**b**)(**1**) is the "withdrawal liability" for which the employer is liable to the plan. Thus, the 2017 Prior Partial Credit adjustment under section 4201(**b**)(**1**)(B) can be applied as an adjustment to the defined withdrawal liability as part of determining the withdrawal liability for which the employer will be liable to the plan. According to section 4201(**b**)(**1**)(C) <u>then</u> the adjustment for the 20 year limitation is applied. If ERISA §4225

12

does not apply, as is the case here, the withdrawal liability for which the employer is liable to the plan has been determined.

Third, Consumers' reliance on the PBGC Opinion Letters from the 1980s is misplaced. PBGC Op. Ltr. 87-7 provides:

> As you are aware, the PBGC issues opinion letters to advise the public of its views of the meaning of the provisions of Title IV of the Employee Retirement Income Security Act ("ERISA"). Such letters are not intended to dispose of particular controversies between private parties. Moreover, because they are the PBGC's interpretations of Title IV and not substantive rules promulgated in accordance with the notice and comment requirements of the Administrative Procedure Act, they are not binding on the public or on the courts. However, interpretative rulings of government agencies "do constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance." Skidmore v. Swift & Co., 323 U.S. 134, 140 (1944). [additional citations omitted]

Neither the arbitrator in *Quad I*, nor the district court, nor the Ninth Circuit in *Quad II*, nor this Arbitrator finds the PBGC Opinion letters from the 1980s convincing. The courts agree, the statute unambiguously requires applying the 2017 Prior Partial Credit before the adjustment for the 20 year limitation.

**Billing Charges**

Having determined that the Fund properly applied the 2017 Prior Partial Credit before the 20 year limitation, the only remaining issue is the "billing charge." The parties agree on the amount of the monthly billing charges that are applied to each of the payment schedules. (Stip Facts 17, 40) ERISA §4219**(c)(3)** provides:

> Each annual payment determined under paragraph (1)(C) shall be payable in 4 equal installments due quarterly, or at other intervals specified by plan rules. If a payment is not made when due, interest on the payment shall accrue from the due date until the date on which the payment is made.

13

The plan rules provide:

> Withdrawal liability shall be payable monthly, according to the schedule determined by the Trustees. Payment of withdrawal liability shall commence no later than 60 days after demand is made therefore by the Trustees. Appendix E, Section 5(b)

The billing charges "constitute interest amounts to account for the fact that payments are made monthly rather than quarterly..." (Stip facts 19, 41)

Consumers argues the statute authorizes interest only for late payments, and only for the period between the date the payment was due and made. The Fund is not entitled to collect interest simply because it chose monthly payments. According to Consumers, PBGC Opinion Letter 85-18 incorrectly states that payments made other than quarterly should be made actuarially equivalent to quarterly payments. Because the Fund can determine other intervals for payment, whatever intervals it chooses become the new due dates. If the payments are made on those dates, no interest or "billing charge" can be applied.

The Fund argues its billing charges are consistent with the PBGC's interpretation of the meaning of "equal installments" in ERISA §4219(c)(3). Because that paragraph permits a plan to choose intervals other than quarterly for payment, the PBGC opined on the effect of that choice:

> We have concluded that if a plan adopts such rules, the plan is authorized to include an appropriate interest factor. Payments made more or less frequently than on a quarterly basis would therefore have a present value equivalent to the value of the amount specified in Section 4219(c)(1)(C) of ERISA, 29 U.S.C. § 1399(c)(1)(C) (1982), as if paid on the quarterly basis specified in 29 U.S.C. § 1399(c)(3). PBGC Opinion Letter 85-1

PBGC Opinion Letter 85-18 provides:

> Whether payments to be made other than quarterly should be reduced or increased to make them actuarially equivalent to the quarterly payments

14

> specified in the statute depends not on whether they are more or less frequent than quarterly but on whether they result in the plan's receiving payment earlier or later than it would have on a quarterly schedule.

The Fund asserts its billing charges make the monthly payments actuarially equivalent to the quarterly payments specified in the statute.

The Arbitrator finds that the Fund is entitled to require "billing charges" that make the monthly payments actuarially equivalent to the value of the quarterly payments specified in ERISA §4219(c)(3). Consumers offers no cogent support for its assertion the statute authorizes interest <u>only</u> for late payments. Nor does it explain why PBGC is "incorrect" in saying that interest charges which make non-quarterly payments actuarially equivalent are sanctioned by the statute. Instead, it says that by requiring monthly payments the Fund has changed Consumers' due dates. Consumers has not made any late payments. Therefore, based on its unsupported assertion the Fund can only charge interest on late payments, the billing charges are improper. The argument is not compelling. The Arbitrator accepts the PBGC interpretation of the statute and finds the Fund did not violate the statute by applying billing charges.

**AMERICAN ARBITRATION ASSOCIATION**

| | |
|---|---|
| CONSUMERS CONCRETE CORP., ) <br> ) <br> *Claimant*, ) <br> ) <br> and ) <br> ) <br> CENTRAL STATES, SOUTHEAST AND ) <br> SOUTHWEST AREAS PENSION FUND, ) <br> ) <br> *Respondent*. ) | AAA No. 01-19-0004-2227 <br><br> Arbitrator Norman Brand |

**FINAL AWARD**

Upon *Central States' Motion for Modification of March 31, 2023 Award Under 29 C.F.R. § 4221.9(b)(3)*, and for the reasons stated in the Award & Opinion dated March 31, 2023 in the above captioned matter, it is found and awarded as follows:

1. Respondent Central States, Southeast and Southwest Areas Pension Fund acted in accordance with ERISA § 4201(b)(1) when it applied the 2017 Prior Partial Credit before applying the 20-year limitation of payments. The payment schedules for both the 2017 Partial Withdrawal and the 2019 Complete Withdrawal are correct.

2. The billing charges on the partial and complete withdrawal liability schedules are proper.

3. With respect to the 2017 Partial Assessment, Claimant Consumers Concrete Corp. shall make 240 monthly payments of $42,212.04, with the first installment due on or before April 1, 2019, and a final installment due on or before March 1, 2039.

**[Remainder of Page Intentionally Left Blank]**

4. With respect to the 2019 Complete Assessment, Claimant Consumers Concrete Corp. shall make 240 monthly payments of $50,736.80, with the first installment due on or before October 1, 2019 and the last such payment due on or before September 1, 2039.

San Francisco, California
4/22/2023

*Norman Brand*
Norman Brand, Arb.