IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CENTRAL STATES, SOUTHEAST AND SOUTHWEST AREAS PENSION FUND; and CHARLES A. WHOBREY, as Trustee, <br><br> Plaintiffs, <br><br> v. <br><br> CONSUMERS CONCRETE CORP., a Michigan corporation, <br><br> Defendant. | Case No. 23-cv-3005 <br><br> Judge Charles P. Kocoras |

### DEFENDANT CONSUMERS CONCRETE CORP.'S ANSWER TO PLAINTIFFS' COMPLAINT

NOW COMES Defendant Consumers Concrete Corp., and answers Plaintiff's Amended Complaint as follows:

1. This is an action to enforce or, alternatively, to modify an arbitration award issued under the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended by the Multiemployer Pension Plan Amendments Act of 1980 ("MPPAA"). 29 U.S.C. § 1401(b)(2).

**RESPONSE**: Admit.

2. This Court has jurisdiction over this action pursuant to 29 U.S.C. §§ 1401(b)(2) and 1451(c).

**RESPONSE**: Admit.

3. Venue lies in this Court under 29 U.S.C. §§ 1401(b)(2) and 1451(d) because the Central States, Southeast and Southwest Areas Pension Fund (the "Fund") is administered at its principal place of business in Chicago, Illinois. Venue is also proper pursuant to Article XIV, Section 10 of the Fund's Trust Agreement and Section 6(b)(2) of Appendix E to the Fund's Plan,

which provide for venue in this Court.

**RESPONSE**:  Defendant admits venue lies in this Court under 29 U.S.C. §§ 1401(b)(2) and 1451(d) and denies the remainder of paragraph 3.

4.     The Fund is a multiemployer pension plan within the meaning of 29 U.S.C. §§ 1002(37) and 1301(a)(3).

**RESPONSE**:  Admit.

5.     Plaintiff Charles A. Whobrey is a present trustee and fiduciary of the Fund within the meaning of 29 U.S.C. § 1002(21)(A), and he and his fellow trustees are the plan sponsor of the Fund within the meaning of 29 U.S.C. § 1301(a)(10). The Trustees administer the Fund at 8647 West Higgins Road, Chicago, Illinois.

**RESPONSE**:  Admit.

6.     Pursuant to 29 U.S.C. §§ 1401(b)(2) and 1451(a)(1), the Trustees, by and through their designated trustee Charles A. Whobrey, are authorized to bring this action on behalf of the Fund, its participants, and its beneficiaries.

**RESPONSE**:  Upon information and belief, admit.

7.     Defendant Consumers Concrete Corp. ("Consumers") is a corporation organized under the laws of the State of Michigan.

**RESPONSE**:  Admit.

8.     During relevant times, Consumers was bound by collective bargaining agreements with Local Union No. 7 affiliated with the International Brotherhood of Teamsters (the "IBT") under which Consumers was required to make contributions to the Fund on behalf of certain of its employees.

**RESPONSE**:  Admit that at certain times Consumers was bound by an agreement with Local No. 7 requiring contributions to the Fund and deny the remaining

2

allegations.

9. In 2017, Consumers ceased to have an obligation to contribute to the Fund under its collective bargaining agreement ("CBA") with Local Union No. 7 affiliated with the IBT, but Consumers continued to perform work in the jurisdiction of the CBA of the type for which contributions were previously remitted to the Fund. As a result of this partial cessation of Consumers' contribution obligation to the Fund, the Fund determined that on December 31, 2017, Consumers effected a "partial withdrawal" from the Fund under 29 U.S.C. § 1385(b)(2)(A).

**RESPONSE**: Admit.

10. As a result of the partial withdrawal described in paragraph 9, on March 14, 2019, Consumers received a notice and demand for payment of withdrawal liability issued by the Fund in accordance with 29 U.S.C. §§ 1382(2) and 1399(b)(1) (the "2017 Partial Assessment).

**RESPONSE**: Admit Consumers received a notice and demand for payment on March 14, 2019, and deny any remaining allegations.

11. In the 2017 Partial Assessment referenced in paragraph 10, the Fund notified Consumers that the liability was required to be discharged in a lump sum of $11,281,848.65 or in 240 monthly payments of $42,212.04, with the first payment due on April 1, 2019, and the last payment due on March 1, 2039 (the "2017 Monthly Payment Schedule").

**RESPONSE**: Admit that the Fund asserted the lump sum amount and that the payment schedule required the first payment on April 1, 2019 and the last payment on March 1, 2039, and deny the remaining allegations.

12. In 2019, Consumers permanently ceased to have an obligation to contribute to the Fund. As a result of this cessation of Consumers' contribution obligation to the Fund, the Fund determined that on or about January 20, 2019, Consumers effected a "complete withdrawal" from the Fund under 29 U.S.C. § 1383.

**RESPONSE**: Admit.

3

13.     As a result of the complete withdrawal described in paragraph 12, on September 20, 2019, Consumers received from the Fund a notice and demand for payment of withdrawal liability issued by the Fund under 29 U.S.C. §§ 1382(2) and 1399(b)(1) (the "2019 Complete Assessment").

> **RESPONSE**: Admit Consumers received a notice and demand for payment on September 20, 2019, and deny any remaining allegations.

14.     In the 2019 Complete Assessment referenced in paragraph 13, the Fund notified Consumers that the liability was required to be discharged in a lump sum of $22,848,299.40 or in 240 monthly payments of $50,736.80, with the first payment due on October 1, 2019, and the last payment due on September 1, 2039 (the "2019 Monthly Payment Schedule").

> **RESPONSE**: Admit that the Fund asserted the lump sum amount and that the payment schedule required the first payment on October 1, 2019 and the last payment on September 1, 2039, and deny the remaining allegations.

15.     MPPAA provides that "[a]ny dispute between an employer and the plan sponsor of a multiemployer plan concerning a determination made under sections 1381 through 1399 of this title shall be resolved through arbitration." 29 U.S.C. § 1401(a)(1).

> **RESPONSE**: Admit.

16.     Consumers timely initiated arbitration to dispute both the 2017 Partial Assessment and the 2019 Complete Assessment. Thereafter, Consumers and the Fund agreed to consolidate Consumers' challenges to the 2017 Partial Assessment and the 2019 Complete Assessment in an arbitration proceeding captioned *Consumers Concrete Corp. v. Cent. States, Se. & Sw. Areas Pension Fund*, AAA Case No. 01 19 0004 2227 (the "Arbitration"). The Arbitration was assigned to Arbitrator Norman Brand.

> **RESPONSE**: Admit.

**The First Arbitration Issue: The Correct Order of Operations**

17. 29 U.S.C. § 1381 provides, in relevant part:

(a) If an employer withdraws from a multiemployer plan in a complete withdrawal or a partial withdrawal, then the employer is liable to the plan in the amount determined under this part to be the withdrawal liability.

(b) For purposes of subsection (a)—

(1) The withdrawal liability of an employer to a plan is the amount determined under section 1391 of this title to be the allocable amount of unfunded vested benefits, adjusted—

(A) first, by any de minimis reduction applicable under section 1389 of this title,

(B) next, in the case of a partial withdrawal, in accordance with section 1386 of this title,

(C) then, to the extent necessary to reflect the limitation on annual payments under section 1399(c)(1)(B) of this title, and

(D) finally, in accordance with section 1405 of this title.

**RESPONSE**: Admit.

18. 29 U.S.C. § 1386(b)(1) provides that an employer's subsequent partial or complete withdrawal liability "shall be reduced by the amount of any partial withdrawal liability (reduced by any abatement or reduction of such liability) of the employer with respect to the plan for a previous plan year."

**RESPONSE**: Admit.

19. Generally speaking, and with certain adjustments not applicable here, 29 U.S.C. § 1399(c) provides that the employer shall pay the amount determined under 29 U.S.C. § 1391 (that is, its pro rata share of the plan's UVBs), over the number of years necessary to amortize the amount in level annual payments. 29 U.S.C. § 1399(c)(1)(A). The amount of each annual payment is determined by multiplying the average number of CBUs for a period of three consecutive plan

5

years during the period of ten plan years prior to the plan year of the withdrawal by the highest contribution rate at which the employer had an obligation to contribute during the ten plan years ending with the plan year of the withdrawal. 29 U.S.C. § 1399(c)(1)(C). Generally, the employer need only pay the first 20 annual payments if the amortization period exceeds 20 years. 29 U.S.C. § 1399(c)(1)(B).

>**RESPONSE**: While the statutory language is a matter of law, Defendant admits the general characterization in paragraph 19.

20. In calculating the 2019 Complete Assessment, and consistent with the text of 29 U.S.C. § 1381(b)(1)(B) and (C), the Fund applied the credit for the 2017 Partial Assessment under 29 U.S.C. § 1386(b) first and then applied the 20-year limitation on payments under 29 U.S.C. § 1399(c)(1)(B).

>**RESPONSE**: Admit that the Fund applied the credit to the amount of unfunded vested benefits (rather than to the amount of withdrawal liability) and before it applied the 20-year limitation on payments to the amount of unfunded vested benefits but deny that this is consistent with the statutory text.

21. The only United States Court of Appeals to consider whether the credit for a prior assessment should be applied before the 20-year limitation on payments has agreed with the interpretation advanced by the Fund. Specifically, the Ninth Circuit has held that:

> The statute unambiguously provides that first after calculating the employer's complete withdrawal liability . . . any adjustment for a partial withdrawal required by § 1386 comes "next." 29 U.S.C. § 1381(b)(1)(B). It is only after that, or "then," that the statute provides for calculation of the debt forgiveness provision in § 1399(c)(1)(B).

*GCIU-Employer Retirement Fund v. Quad/Graphics, Inc.*, 909 F.3d 1214, 1218 (9th Cir. 2018).

>**RESPONSE**: Admit.

22. In the Arbitration, Consumers challenged the Fund's calculation of the 2019 Complete Assessment and argued that the Fund was instead required to apply the 20-year limitation on payments under 29 U.S.C. § 1399(c)(1)(B) first, and only then was to apply the credit

for the 2017 Partial Assessment under 29 U.S.C. § 1386(b).

**RESPONSE**: Admit.

### The Second Arbitration Issue: the Correct Amount of Credit for the 2017 Partial Assessment

23. 29 U.S.C. § 1386(b)(1) provides that an employer's subsequent partial or complete withdrawal liability "shall be reduced by the amount of any partial withdrawal liability (reduced by any abatement or reduction of such liability) of the employer with respect to the plan for a previous plan year." Given that the Fund uses the modified presumptive method for calculating withdrawal liability, the relevant regulation describing the credit to be calculated pursuant to 29 U.S.C. § 1386(b)(1) is found at 29 C.F.R. § 4206.5. The Fund calculated the initial value of the credit for the 2017 Partial Assessment under 29 C.F.R. § 4206.5 (before accounting for necessary adjustments, described below) as $9,481,183.65.

**RESPONSE**: Admit.

24. The regulations implementing 29 U.S.C. § 1386(b)(1) provide that if an employer's prior partial withdrawal liability has been "reduced or waived," the credit for said prior partial withdrawal liability (determined under 29 C.F.R. § 4206.5) is to be adjusted in accordance with 29 C.F.R. § 4206.8.

**RESPONSE**: Admit the regulations state as much but deny that the Fund reduced or waived any portion of Defendant's prior partial withdrawal liability.

25. Specifically, under 29 C.F.R. § 4206.8(b), this credit adjustment is calculated by multiplying the credit calculated under 29 C.F.R. § 4206.5 by a fraction, with the numerator being the difference between the "the total partial withdrawal liability of the employer for all partial withdrawals in prior years" minus the present value of "each abatement or other reduction of that prior withdrawal liability calculated as of the date on which that prior partial withdrawal liability was determined," and the denominator being "the total partial withdrawal liability of the employer

7

for all partial withdrawals in prior years."

>**RESPONSE**: Admit.

26. In determining the present value of "each abatement or other reduction of that prior partial withdrawal liability" under 29 C.F.R. § 4206.8(b), the Fund determined the 2017 Partial Assessment to have been abated or reduced by $10,777,555.85, which sum reflects the amount of withdrawal liability principal of the 2017 Partial Assessment that Consumers will not satisfy because most of what Consumers will pay is attributable to amortization.

>**RESPONSE**: Admit that the Fund purported to have determined that the prior partial withdrawal liability had been reduced by $10,777,555.85, but deny that this reflects the amount of withdrawal liability principal that Defendant will not satisfy. Answering further, Defendant notes that the parties stipulated that the present value of the partial withdrawal was $7,727,681.56. Given this stipulation, the Fund cannot logically claim a reduction greater than the principal amount.

27. The Fund's calculations resulted in a fraction of 0.0446994828 under 29 C.F.R. § 4206.8. The Fund then multiplied this fraction by the initial pre-adjustment amount of $9,481,183.65, which results in a final credit of $423,804.01 for the 2017 Partial Assessment to be applied to the 2019 Complete Assessment. This amount reflects the amount of the 2017 Partial Assessment's principal that Consumers will have satisfied at the conclusion of the 2017 Monthly Payment Schedule under 29 U.S.C. § 1399(c).

>**RESPONSE**: Admit the Fund erroneously calculated these amounts, and deny that these amounts reflect the amount of principal Defendant will satisfy under the payment schedule.

28. In the Arbitration, Consumers challenged the Fund's calculation of the 2019 Complete Assessment and argued that there was no "abatement or other reduction" of its 2017 Partial Assessment for purposes of 29 C.F.R. § 4206.8.

>**RESPONSE**: Admit.

## The Arbitration Award

29. The parties participated in a hearing on October 28, 2022 in the Arbitration, and

submitted multiple briefs.

**RESPONSE**: Admit.

30. On April 3, 2023, Arbitrator Brand issued an Opinion and Award via email from the American Arbitration Association to the parties.

**RESPONSE**: Admit, but note that the Award was dated March 31, 2023.

31. Then, on April 19, 2023, the Fund moved for a modification of the Opinion and Award pursuant to 29 C.F.R. § 4221.9 in order to clarify the relief to which the Fund is entitled.

**RESPONSE**: Admit.

32. Via email on April 30, 2023, Arbitrator Brand granted the Fund's motion and modified the April 3, 2023 Opinion and Award to clarify the relief to which the Fund is entitled, specifically by requiring Consumers to make the payments described in the 2017 Monthly Payment Schedule and the 2019 Monthly Payment Schedule. A true and accurate copy of the Opinion and Award, as modified by the Arbitrator's April 30, 2023 order (the "Final Award"), is attached hereto as Exhibit A.

**RESPONSE**: Admit.

33. In the Final Award, Arbitrator Brand ruled that "The Fund acted in accordance with [29 U.S.C. § 1381(b)(1)] when it applied the 2017 Prior Partial Credit before applying the 20-year limitation of payments. The payment schedules for both the 2017 Partial Withdrawal and the 2019 Complete Withdrawal are correct." (Final Award, Ex. A, at 16.) In reaching this conclusion, the Arbitrator explained that:

> the plain language of the statute requires applying the [29 U.S.C. § 1386(b)] 2017 Prior Partial Credit as a [29 U.S.C. § 1381(b)(1)] adjustment. It is an adjustment "in the case of a partial withdrawal" because it is applying a prior partial withdrawal credit. . . . [29 U.S.C. § 1381(b)] provides a specific sequence for adjusting defined withdrawal liability to determine the withdrawing employer's liability to the plan.

9

(*Id*. at 11.) Accordingly, the Arbitrator concluded that "the statute unambiguously requires applying the 2017 Prior Partial Credit before the adjustment for the 20 year limitation." (*Id*. at 13.)

    **RESPONSE**: Admit.

34.    The Arbitrator's decision was in accordance with the Ninth Circuit's opinion in *Quad/Graphics, Inc.*, 909 F.3d at 1218.

    **RESPONSE**: Deny. Among other errors, the Arbitrator premised his decision on the novel idea that "withdrawal liability" is distinct from "the amount determined to be the withdrawal liability," which idea is nowhere found in the *Quad/Graphics* ruling (or the statute).

35.    The parties stipulated that, if the Arbitrator agreed with the Fund with respect to the correct order of applying the prior credit vis-à-vis the 20-year payment limitation (the "First Issue" described in paragraphs 17-22 above), then there would be no need for the Arbitrator to resolve the dispute concerning the correct amount of the credit for the 2017 Partial Assessment (the "Second Issue" described in paragraphs 23–28 above), because in that scenario resolution of the second issue would not change the 2019 Monthly Payment Schedule. (Final Award, Ex. A at pp. 4, 16.)

    **RESPONSE**: Admit.

36.    Accordingly, because the Arbitrator ruled in the Fund's favor as to the "First Issue," there was no need for the Arbitrator to resolve the dispute concerning the correct amount of the credit for the 2017 Partial Assessment (the "Second Issue" described in paragraphs 23–28 above), as the ruling on the "First Issue" was sufficient to uphold the 2019 Complete Assessment such that there was no need to consider or resolve the "Second Issue." (*Id*. at pp. 4, 16.)

    **RESPONSE**: Admit.

**The Court Should Enforce or, Alternatively, Modify the Award**

37. MPPAA provides that "[u]pon completion of the arbitration proceedings in favor of one of the parties, any party thereto may bring an action . . . in an appropriate United States district court in accordance with section 1451 of this title to enforce, vacate, or modify the arbitrator's award." 29 U.S.C. § 1401(b)(2).

**RESPONSE**: Admit.

38. The Final Award should be enforced as a matter of law. Specifically, Arbitrator Brand's conclusion—that the Fund was correct to apply the credit for the 2017 Partial Assessment before applying the 20-year limitation of payments—was a correct application of the relevant law.

**RESPONSE**: Deny.

39. Accordingly, the Final Award should be enforced, as it upholds the payment schedules set forth in the Fund's notice and demands (i.e., in the case of the 2017 Monthly Payment Schedule, monthly payments of $42,212.04, due from April 2019 through March 2039; and, in the case of the 2019 Monthly Payment Schedule, monthly payments of $50,736.80, due from October 2019 through September 2039).

**RESPONSE**: Deny.

40. In the alternative, and in the event that the Court disagrees with the Arbitrator as to whether the Fund was correct to apply the credit for the 2017 Partial Assessment before applying the 20-year limitation of payments, the Court should modify the Final Award, such that the Final Award affirms the 2017 Monthly Payment Schedule, but revising the 2019 Monthly Payment Schedule to require 225 monthly payments of $50,736.80, due from October 1, 2019 through June 1, 2038 and a final payment of $19,992.15 due on July 1, 2038. In the Arbitration, the parties stipulated that such a payment schedule is the result of applying a credit of $423,804.01 for the 2017 Partial Assessment to the 2019 Complete Assessment *after* applying the 20-year limitation

11

on payments described in 29 U.S.C. § 1399(c)(1)(B).

**RESPONSE**:  Deny.

41. Put differently, if the Court disagrees with the Fund as to the order-of-operations issue (described in paragraphs 17–22 above), the Court should agree with the Fund with respect to the issue of the amount of the credit for the 2017 Partial Assessment (described in paragraphs 23–28) and modify the Final Award accordingly.

**RESPONSE**:  Deny.

Date: July 24, 2023

Respectfully submitted,

/s/ Mark M. Trapp
Mark M. Trapp
Conn Maciel Carey LLP
53 W. Jackson Boulevard
Suite 1328
Chicago, Illinois 60604
(312) 809-8122
mtrapp@connmaciel.com

**CERTIFICATE OF SERVICE**

I hereby certify that on July 24, 2023 a true and correct copy of the foregoing DEFENDANT CONSUMERS CONCRETE CORP'S ANSWER TO PLAINTIFFS' COMPLAINT was served via ECF on:

>Daniel E. Sullivan
>8647 West Higgins Road, 8th Floor
>Chicago, IL 60631
>(847) 582-5078
>dsulliva@centralstatesfunds.org
>*Counsel for Plaintiffs*

>/s/ Mark M. Trapp
>Mark M. Trapp