IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CONSUMERS CONCRETE CORP., <br><br> Plaintiff, <br><br> v. <br><br> CENTRAL STATES, SOUTHEAST AND SOUTHWEST AREAS PENSION FUND, <br><br> Defendant. | Case No. 23 C 2695 <br><br> Hon. LaShonda A. Hunt |
| CENTRAL STATES, SOUTHEAST AND SOUTHWEST AREAS PENSION FUND and CHARLES A. WHOBREY, as trustee, <br><br> Plaintiffs, <br><br> v. <br><br> CONSUMERS CONCRETE CORP., <br><br> Defendant. | Case No. 23 C 3005 <br><br> Hon. LaShonda A. Hunt |

**MEMORANDUM OPINION AND ORDER**

In 2019, Consumers Concrete Corp. ("Consumers") ended its participation in a multiemployer pension plan administered by Central States, Southeast and Southwest Areas Pension Fund (the "Fund"). After a disagreement arose concerning the amount of Consumers' withdrawal liability owed to the Fund under the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended by the Multiemployer Pension Plan Amendments Act of 1980 ("MPPAA"), an arbitrator resolved the dispute in the Fund's favor.

Consumers brought this action to modify/vacate the arbitration award. The Fund and one of its present trustees later filed a complaint to enforce or modify the arbitration award. The Court

subsequently consolidated both cases and ordered all future filings to be made in the lead case (23 C 2695) only. Currently before the Court are the Fund's motion to enforce or, in the alternative, modify arbitration award (Dkt. 28), and Consumers' motion to vacate or modify arbitration award. (Dkt. 30). For the reasons discussed below, the Fund's motion is denied and Consumers' motion to vacate or modify the arbitration award is granted.

## BACKGROUND

**I.      Statement of Facts**

The parties jointly stipulated to the facts in the underlying arbitration. (Stipulation, Dkt. 21-1). The Fund is a multiemployer pension plan. (*Id.* at 157).[1] Consumers was a contributing employer to the Fund. (*Id.* at 158).

In 2017, Consumers underwent a partial cessation of its contribution obligation to the Fund. (*Id.* at 158-159). On December 31, 2017, the Fund determined that Consumers effected a "partial withdrawal" from the Fund under 29 U.S.C. § 1385(b)(2)(A) (the "2017 Partial Withdrawal"). (*Id.* at 158-159). The Fund later sent Consumers a notice and demand letter indicating that Consumers could satisfy its 2017 Partial Withdrawal via a single lump sum payment of $11,281,848.65, or 240 monthly payments of $42,212.04. (*Id.* at 160).

In January 2019, Consumers bargained out of participation in the Fund entirely. (*Id.* at 163). On September 19, 2019, the Fund determined that Consumers effected a "complete withdrawal" as described in 29 U.S.C. § 1383 (the "2019 Complete Withdrawal"). (*Id.*). That day, the Fund sent Consumers a notice and demand letter indicating that Consumers could satisfy the

---

[1] Unless otherwise noted, page numbers in citations to the docket reference the "PageID #" in the CM/ECF header of the document, not other page numbers in the header or footer."

2019 Complete Withdrawal via a single lump sum payment of $22,848,299.40, or 240 monthly payments of $50,736.80. (*Id.* at 164).

The parties offer differing interpretations of how the Fund should have calculated the 2019 Complete Withdrawal. (*Id.* at 169). Specifically, Consumers challenges the Fund's application of the prior partial credit for the 2017 Partial Withdrawal, which the Fund used to reduce amounts owed for the 2019 Complete Withdrawal under 29 U.S.C. § 1386(b)(1). (*Id.* at 168-170). Consumers asserts that the prior partial credit must be applied after the four adjustments in section 1381(b)(1)(A)-(D). The Fund, on the other hand, maintains that it correctly applied the prior partial credit as part of the second adjustment under 29 U.S.C. § 1381(b)(1)(B).

## II.  Procedural History

The parties eventually arbitrated their dispute. The arbitrator found "no merit to Consumers argument that the Fund should have applied the" prior partial credit after the four adjustments listed under section §§ 1381(b)(1)(A)-(D). (Award & Opinion, at 1818, Dkt. 21-19). In support of his decision, the arbitrator reasoned that: (1) the plain language of section 1381(b)(1) requires applying the prior partial credit at the second adjustment under section 1381(b)(1)(B); (2) the application of the prior partial credit at the second adjustment does not render the term "withdrawal liability" as "surplusage"; and (3) the Pension Benefit Guaranty Corporation ("PBGC") opinion letters that Consumers relied upon in support of its position were unpersuasive. (Award & Opinion, at 1818-1820).

The Fund has moved to enforce or modify the arbitration award, while Consumers seeks to vacate or modify the arbitration award. Both motions are fully briefed.

**STANDARD OF REVIEW**

A party may seek judicial review to "enforce, vacate, or modify" an arbitrator's award in a withdrawal-liability arbitration. 29 U.S.C. § 1401(b)(2). An arbitrator's findings of fact are presumed correct, "rebuttable only by a clear preponderance of the evidence." 29 U.S.C. § 1401(c). An arbitrator's legal conclusions are reviewed de novo. *Trustees of Iron Workers Loc. 473 Pension Tr. v. Allied Prods. Corp.*, 872 F.2d 208, 211 (7th Cir. 1989).

**DISCUSSION**

**I.**

"Multiemployer pension plans are based on defined contributions and pay defined benefits." *Ind. Elec. Workers Pension Ben. Fund v. ManWeb Servs.*, 884 F.3d 770, 775 (7th Cir. 2018). If one employer defaults on its contributions, whether by delinquency or withdrawal, other employers must make up the difference to cover the defined benefits owed to participants. *Upholsterers' Int'l Union Pension Fund v. Artistic Furniture of Pontiac*, 920 F.2d 1323, 1327-1328 (7th Cir. 1990) (citing *Central States, Se. & Sw. Areas Pension Fund v. Gerber Truck Serv. Inc.*, 870 F.2d 1148, 1151 (7th Cir. 1989)). Unpaid contributions also result in the loss of investment income that could have been earned by the plan. *Id.* at 1328. "Both types of losses put financial pressure on the remaining employers and discourage new employers from joining. The financial stability of the plan is put in jeopardy, and plan beneficiaries risk losing their pension benefits." *ManWeb*, 884 F.3d at 775.

"The MPPAA amended ERISA to protect multiemployer plans from these damaging consequences of withdrawal." *Id.* In enacting the MPPAA, Congress reflected "a desire to (1) relieve the financial burden placed upon remaining contributors to a multiemployer fund when one or more of them withdraws from the plan; (2) avoid creating a severe disincentive to new

4

employers entering the plan; and (3) prevent the creation of funding deficiencies." *Id.* at 775-776. Withdrawal liability is imposed on an employer that ends its participation in a multiemployer plan either completely or in part. *Id.* at 776. The House Committee on Education and Labor explained in enacting the MPPAA: "[e]mployer withdrawal liability will help to insulate a plan from the adverse effects of a sustained decline in the contribution base." *Id.* (quoting H.R. Rep. 96-689, Part 1, at 67, 1980 U.S.C.C.A.N. at 2395). The MPPAA creates an exit price to disincentivize employers from withdraw from multiemployer pension plans. *See, e.g., Milwaukee Brewery Workers' Pension Plan v. Joseph Schlitz Brewing Co.*, 513 U.S. 414, 416-417 (1995) (describing the potential for a "stampede for the exit doors" pre-MPPAA when employers perceived a pension plan to be on shaky financial ground).

Under the MPPAA, withdrawal liability is either "partial," *i.e.*, imposed when "the employer permanently ceases to have an obligation to contribute under one or more but fewer than all collective bargaining agreements under which the employer has been obligated to contribute under the plan," or "complete," *i.e.*, imposed when the employer "permanently ceases to have an obligation to contribute under the plan." 29 U.S.C. §§ 1383(a)(1), 1385(b)(2)(A)(i). The MPPAA contains a "detailed set of rules for determining" the withdrawal liability charge. *Milwaukee Brewery*, 513 U.S. at 417-418. In short, "[i]f an employer withdraws from a multiemployer plan in a complete withdrawal or a partial withdrawal, then the employer is liable to the plan in the amount determined under [section 1381] to be the withdrawal liability." 29 U.S.C. § 1381(a).

When calculating withdrawal liability—whether complete or partial—section 1381(b)(1) states to first calculate "the amount determined under section 1391 of this title to be the allocable amount of unfunded vested benefits [or the 'UVB']." 29 U.S.C. § 1381(b)(1). Then a series of four adjustments to the UVB must be made, if applicable:

5

> (A) first, by any de minimis reduction applicable under section 1389 of this title [(*i.e.*, the "First Adjustment")],
>
> (B) next, in the case of a partial withdrawal, in accordance with section 1386 of this title [(*i.e.*, the "Second Adjustment")],
>
> (C) then, to the extent necessary to reflect the limitation on annual payments under section 1399(c)(1)(B) of this title [(*i.e.*, the "Third Adjustment")], and
>
> (D) finally, in accordance with section 1405 of this title [(*i.e.*, the "Fourth Adjustment")].

29 U.S.C. §§ 1381(b)(1)(A)-(D). After the four adjustments are complete, the resulting amount is an employer's withdrawal liability for a given plan year.

In sum, the total withdrawal liability an employer must pay for a partial or complete withdrawal from a multiemployer plan is equal to the sum of the UVB, and the four adjustments enumerated in section 1381(b)(1)(A)-(D).

## II.

The parties do not contest the arbitrator's calculation of the UVB. Nor do they contest his application of the First, Third, or Fourth Adjustments. The main issue before the Court is whether the arbitrator correctly applied the Second Adjustment under section 1381(b)(1)(B).

Consumers argues that the arbitrator erred by applying the 2017 Partial Withdrawal as part of the Second Adjustment rather than as a post-adjustment credit to the 2019 Complete Withdrawal. (Pl.'s Mot., at 1905). In contrast, the Fund says the arbitrator is correct because the plain language of the statute requires applying the 2017 Partial Withdrawal as part of the Second Adjustment. (Def.'s Mot., at 1865-1866). "Which interpretation is correct? To decide, [courts] start with the text of the statute." *Babb v. Wilkie*, 589 U.S. 399, 404 (2020); *see also Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 251 (2010) ("As in all such cases [of statutory construction], we begin by analyzing the statutory language[.]").

6

Courts read a statute "as a whole rather than as a series of unrelated and isolated provisions." *Consumer Fin. Prot. Bureau v. Townstone Fin., Inc.*, 107 F.4th 768, 776 (7th Cir. 2024) (quotations omitted). "The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." *Id.* (quoting *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997)). Analysis of the text of the MPPAA as a whole makes clear that the prior partial credit should not apply during the Second Adjustment; rather, it must be applied after all four adjustments under section 1381(b)(1).

Relevant here, the Second Adjustment under section 1381(b)(1)(B) applies only "in the case of partial withdrawal." 29 U.S.C. § 1381(b)(1)(B). When this antecedent condition exists, the statute directs adjusting the UVB "in accordance with section 1386 of this title." *Id.* Section 1386 is titled "[a]djustment for partial withdrawal; determination of amount; reduction for partial withdrawal liability; procedures applicable." 29 U.S.C. § 1386; *see also United States v. Rand*, 482 F.3d 943, 947 (7th Cir. 2007) (stating that a statute's title can "inform the meaning of ambiguous text," but cannot "limit the plain meaning of the text"). Consistent with its title, the section is divided up into to two subsections—(a) and (b).

Subsection (a) addresses the calculation of "[t]he amount of an employer's liability for a partial withdrawal," and indicates that it must be applied "before the application of sections 1399(c)(1) and 1405 of this title," *i.e.*, the Third and Fourth Adjustments. 29 U.S.C. § 1386(a). It is further divided into paragraphs (1) and (2) that provide how to apply the Second Adjustment to the UVB when calculating partial withdrawal liability. 29 U.S.C. §§ 1386(a)(1)-(2). The language of section 1386(a) aligns with the section's title, which indicates instructions for "[a]djustments for partial withdrawal" and the "determination of amount." 29 U.S.C. § 1386. Fundamentally,

7

section 1386(a) may only be applied to partial withdrawals and provides calculations to make to the UVB to account for a partial rather than complete withdrawal.

Similarly, subsection (b) is divided into two paragraphs that also track section 1386's title indicating that the statute addresses "procedures applicable" and "reduction for partial withdrawal liability." Paragraph (2) allows the PBGC to establish procedures for application of partial withdrawal liability under paragraph (1). 29 U.S.C. § 1386(b)(2). And paragraph (1), known as the prior partial credit, relates to reductions for partial liability and states:

> In the case of an employer that has withdrawal liability for a partial withdrawal from a plan, any withdrawal liability of that employer for a partial or complete withdrawal from that plan in a subsequent plan year shall be reduced by the amount of any partial withdrawal liability (reduced by any abatement or reduction of such liability) of the employer with respect to the plan for a previous plan year.

29 U.S.C. § 1386(b)(1). Essentially, once an employer has incurred "withdrawal liability for a partial withdrawal from a plan" in a *previous plan year*, the prior partial withdrawal liability must be subtracted or "reduced" from any withdrawal liability of the employer for a partial or complete withdrawal from that plan in a *subsequent plan year*." *Id.* (emphasis added).

Synthesizing these requirements, section 1386(b)(1) applies when an employer has current withdrawal liability—partial or complete—and previously incurred partial withdrawal liability in a previous plan year. Under those circumstances, the statute mandates crediting the prior partial withdrawal liability to the withdrawal liability for a subsequent year. For instance, if Company A plans to completely withdraw from a pension fund and has already been assessed a penalty for a partial withdrawal two years earlier, it would receive a credit for that previous liability. The question here is when does that credit apply?

The Court finds that the prior partial credit must be applied after the four adjustments of section 1381(b)(1). Reading the MPPAA holistically, sections 1381 and 1386 demonstrate that the

8

Second Adjustment does not include the prior partial credit specified in section 1386(b)(1). The Fund's interpretation, which requires the credit to be applied during the Second Adjustment, improperly forces the application of the prior partial credit to an employer's UVB. The statutory language, however, unambiguously requires the prior partial credit to reduce "partial or complete withdrawal" in a "subsequent plan year." 29 U.S.C. § 1386(b)(1). Critically, the UVB does not constitute withdrawal liability until the four adjustments in section 1381(b)(1)(A)-(D) are applied, making the prior partial credit's application contingent on those four adjustments.

The Fund erroneously contends that the Second Adjustment's clause "in accordance with section 1386 of this title" requires applying all provisions of section 1386 before the Third Adjustment. (Def.'s Mot., at 1864-1865). Indeed, the Fund argues that "both parts of 29 U.S.C. § 1386 are invoked by [the Second Adjustment]" and thus those provisions apply during a complete withdrawal. (Def.'s Mot., at 1864-1865). This interpretation is flawed for two key reasons.

First, the clause "in accordance with section 1386 of this title" is grammatically dependent on the preceding independent clause, which specifies the Second Adjustment applies "in the case of a partial withdrawal." 29 U.S.C. § 1381(b)(1)(B). The Fund's reading renders that clause meaningless. Indeed, the Fund's interpretation requires application of section 1386(a) identically, whether the withdrawal is partial or complete, thereby negating the specificity of the statutory language of both sections. *Compare* 29 U.S.C. § 1381(b)(1)(B) (Second Adjustment "in the case of a partial withdrawal") *with* 29 U.S.C. § 1386(a) (providing calculations to apply to the UVB to account for a partial rather than complete withdrawal). The plain language of both the Second Adjustment and section 1386(a) establish that those provisions apply only where there is a partial

9

withdrawal. Thus, any reading inconsistent with this proposition is contrary to the plain text of the statute.

Second, the Fund's cited language does not mandate applying the prior partial credit during the Second Adjustment. Courts must interpret the plain language of a statute in light of its placement in the overall text of the statute and looking to its purpose. *Bria Health Servs. LLC v. Eagleson*, 950 F.3d 378, 383 (7th Cir. 2020). It therefore follows that the clause "in accordance with section 1386 of this title" requires the Second Adjustment to be applied in a manner consistent with section 1386's text and purpose. As previously noted, the prior partial credit under section 1386(b)(1) is applied to "any withdrawal liability" (which is not the same as the UVB), while the partial withdrawal adjustment under section 1386(a) must be applied to the UVB. Consequently, incorporating the prior partial credit in the Second Adjustment would conflict with, rather than be in accordance with, section 1386. *See Russello v. United States*, 464 U.S. 16, 23 (1983) ("[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.").

Based on the above analysis, the Court agrees with Consumers that the MPPAA necessitates the prior partial credit is not part of the Second Adjustment and must be applied after the four adjustments outlined in section 1381(b)(1)(A)-(D).

**III.**

The Court recognizes that this is an extremely close question and other courts have ruled in favor of parties like the Fund under similar circumstances. Indeed, both the Fund (and the arbitrator) rely on *GCIU-Employer Ret. Fund v. Quad/Graphics, Inc.*, 250 F. Supp. 3d 551 (C.D. Cal. 2017) ("*Quad/Graphics I*") and *GCIU-Emp. Ret. Fund v. Quad/Graphics, Inc.*, 909 F.3d 1214

(9th Cir. 2018) ("*Quad/Graphics II*") (together, "*Quad/Graphics*") for the proposition that "the text of 29 U.S.C. § 1381(b)(1) unambiguously requires that the credit for a prior partial withdrawal . . . be applied" during the Second Adjustment. (Def.'s Mot., at 1863-1864) (citing *Quad/Graphics II*, 909 F.3d at 1218); (Award & Opinion, at 1818) (citing *Quad/Graphics I*, 250 F. Supp. 3d at 563).

In *Quad/Graphics I*, the court found that because the Second Adjustment broadly references adjustments made "in accordance with section 1386 of this title," it was not limited solely to certain provisions under that section. *Quad/Graphics I*, 250 F. Supp. 3d at 563.[2] It noted that "Congress could have placed the partial withdrawal credit in another section of the statute" if it did not mean for the prior partial credit to be included in the Second Adjustment. *Id.* Furthermore, the court found particular significance in the parallel structure of the statutory provisions in the prior partial credit and the Second Adjustment, as it was persuaded by the similar language suggesting that "Congress affirmatively intended" for the Second Adjustment to refer to the credit. *Id.* Specifically, the court identified that the prior partial credit provision "applies '[i]n the case of an employer that has withdrawal liability for a partial withdrawal from a plan,'" *id.* at 563-564 (quoting 29 U.S.C. § 1381(b)(1)(B)), which closely mirrors the Second Adjustment's language indicating it applies "'in the case of a partial withdrawal.'" *Id.* at 564 (quoting 29 U.S.C. § 1386(b)(1)). The court thus concluded that the clause "in the case of a partial withdrawal," in the Second Adjustment broadly refers to "any situation where a partial withdrawal may impact the

---

[2] In *Quad/Graphics II*, the Ninth Circuit affirmed the district court ruling on withdrawal liability, holding that the credit should be applied at the Second Adjustment. *Quad/Graphics II*, 909 F.3d at 1218. The appellate court reasoned that because "[t]he § 1386(b) prior partial withdrawal credit reduces the employer's complete withdrawal liability . . . [t]he § 1399(c)(1)(B) provision [or the Third Adjustment], which forgives debt, can only logically be applied after that withdrawal liability is calculated. The § 1386(b) credit reduces the employer's debt, and an employer cannot be forgiven a debt for which it is not liable." *Id.* The Ninth Circuit did not conduct the same in-depth analysis of all of the relevant provisions like the district court in *Quad/Graphics I*.

assessment," without consideration of whether the withdrawal being assessed is partial or complete. *Id.*

Central to the court's reasoning was a comprehensive view of section 1381(b)(1) as more than a mere calculation method. The court read section 1381(b)(1) as "all-inclusive" such that "an argument could be made that [it] is not just a roadmap for calculating withdrawal liability, but actually defines" the term as the UVB, adjusted by the four adjustments. *Id.* This viewpoint led to the conclusion that there cannot be a credit outside of this calculation because the Fourth Adjustment is the final step when determining withdrawal liability. *Id.*

The district court ended its analysis with an examination of section 1399, which is implicated by the Third Adjustment, because that section includes a cross-reference to "section 1386" in whole. *Id.* Noting that "there is nothing in subparagraph (A) [of section 1399] that limits the adjustments to be made under § 1386," the court concluded that because the Third Adjustment requires the amortization of UVB, adjusted by the First Adjustment, and followed by "appropriate" adjustments "under section 1386" (*i.e.*, the Second Adjustment), it must include the prior partial credit in section 1386. *Id.*

Although the interpretation of the statutory language in the *Quad/Graphics* decisions is not implausible, this Court finds the Fund's reliance on those cases to be misplaced for several reasons.[3] First, *Quad/Graphics* improperly conflates withdrawal liability—an umbrella term encompassing both complete and partial withdrawals—with unfunded vested benefits or the UVB.

---

[3] The Fund also cites the only other decision to address this issue, *Perfection Bakeries, Inc. v. Retail Wholesale & Dep't Store Int'l Union & Indus. Pension Fund*, No. 2:22-CV-573-ACA, 2023 WL 4412165 (N.D. Ala. Jul. 7, 2023), appeal docketed, No. 23-12533 (11th Cir. argued Sep. 26, 2024), to support its position. (Def.'s Mot., at 1863). The *Perfection Bakeries* court stated that it agrees with *Quad/Graphics* reasoning that "the statute unambiguously requires the credit to be applied as part of the second potential adjustment." *Id.* at *10. That court's ruling has since been appealed and argued before the Eleventh Circuit. For the same reasons as discussed here, *infra* at 12-15, this Court respectfully disagrees with the reasoning of *Perfection Bakeries*.

Section 1381 expressly states that "withdrawal liability . . . is the amount determined under section 1391" after that amount is "adjusted" by the four enumerated adjustments. 29 U.S.C. § 1381(b)(1). In other words, an employer's UVB is not deemed the employer's withdrawal liability until the four adjustments are applied. That is because the statute requires the adjustments to apply to the UVB, and the credit for a partial withdrawal liability assessment to apply to the resulting complete or partial withdrawal liability. *See* U.S.C. § 1386(b)(1) (requiring any withdrawal liability to be reduced or credited by the "partial withdrawal liability" from a prior year). Indeed, the *Quad/Graphics I* court acknowledged this conundrum but did not reconcile the distinction between withdrawal liability and UVB. *See Quad/Graphics I*, 250 F. Supp. 3d at 564 (explaining that "an argument could be made that § 1381(b)(1) . . . actually *defines* 'withdrawal liability'" as the UVB adjusted by the four adjustments) (emphasis in original).

Furthermore, section 1386 clearly delineates between the prior partial credit under section 1386(b) and the partial withdrawal adjustment under section 1386(a). Subsection (a) of section 1386 addresses the "adjustment for partial withdrawal," and outlines how to calculate "[t]he amount of an employer's liability for a partial withdrawal, before the application of" the Third and Fourth Adjustments. Mechanically, section 1386(a)(1) requires calculating the UVB and the First Adjustment as if the employer was undergoing a complete withdrawal. 29 U.S.C. § 1386(a)(1). This adjusted-UVB figure is then modified by a complex fraction involving the employer's contribution base points to account for the fact that subsection (a) only applies to partial withdrawals. 29 U.S.C. § 1386(a)(2). As a result, the plain language of sections 1381 and 1386(a) provide that section 1386(a) is in fact the adjustment to the UVB which applies only "in the case of a partial withdrawal." 29 U.S.C. § 1381(b)(1)(B).

13

The Court believes this interpretation is supported by a careful reading of the prior partial credit under section 1386(b)(1). While the phrase "in the case of a partial withdrawal," in the Second Adjustment indicates that the *Second Adjustment* applies only in the case of a partial withdrawal, it does not limit when the *prior partial credit* applies. *Compare* 29 U.S.C. § 1381(b)(1)(B) *with* 29 U.S.C. § 1386(b)(1). The *Quad/Graphics* rulings simply do not address this nuance. The plain text of section 1386 indicates that subsection (a) applies only to the UVB in accordance with a partial withdrawal and the prior partial credit under subsection (b) applies to withdrawal liability regardless of whether a withdrawal is partial or complete. Because the Second Adjustment requires a partial withdrawal and adjusts the UVB, subsection (a) is the only subsection of section 1386 that is applied during the Second Adjustment.

Next, the PBGC's regulations and procedures under section 1386(b)(2) further support this Court's interpretation. Following the Supreme Court's guidance in *Loper Bright Enterprises v. Raimondo*, courts must interpret statutes using the "traditional tools of statutory construction," while carefully considering "the judgment of the Executive Branch," which "help[s] inform that inquiry." 603 U.S. 369, 412-413 (2024). The Supreme Court also "made a point of emphasizing that 'when a particular statute delegates authority to an agency consistent with constitutional limits, courts must respect the delegation, while ensuring that the agency acts within it.'" *Gulomjonov v. Bondi*, No. 21-2844, 2025 WL 815762, at *5 (7th Cir. Mar. 14, 2025) (quoting *Loper Bright*, 603 U.S. at 413).

Congress expressly authorized the PBGC to "prescribe such regulations as may be necessary" for applying the prior partial credit. 29 U.S.C. § 1386(b)(2). The regulation titled "[c]redit against liability for a subsequent withdrawal" clarifies that the credit applies to "new

14

withdrawal liability," not the UVB. 29 C.F.R. § 4206.3. This regulation therefore supports applying the credit after the four adjustments.

Last, while it owes no deference to agency opinions, the Court finds the PBGC's Opinion Letter 85-4 persuasive. *See Nat'l Shopmen Pension Fund v. DISA Indus., Inc.*, 653 F.3d 573, 580 (7th Cir. 2011) ("Although we owe no deference to the position taken by the agency in an opinion letter, . . . we find the [PBGC]'s views persuasive."). The letter explicitly states that the prior partial credit reduces withdrawal liability and is "not an adjustment under Section [1381](b)(1) at all," but rather a "further adjustment to withdrawal liability." PBGC Op. Ltr. 85-4, at 1-2 (Jan. 30, 1985).[4] The Court holds the same here.

Consequently, the Court concludes that the arbitrator incorrectly applied the prior partial credit during the Second Adjustment. The plain text of sections 1381 and 1386 require applying the prior partial credit to an employer's withdrawal liability, which is calculated only after the four adjustments in section 1381(b)(1)(A)-(D) are applied to the UVB. The PBGC's regulations and opinion letter further support this textual interpretation. The Court therefore vacates the arbitration award and remands the case for further proceedings consistent with this decision.[5]

## CONCLUSION

For all the foregoing reasons, the Fund's motion to enforce or, in the alternative, modify the arbitration award [28] is denied and Consumers' motion to vacate or modify the arbitration award [30] is granted. The Clerk is directed to enter judgment in favor of Consumers, vacating the

---

[4] The PBGC Opinion Letter can be accessed here: https://www.pbgc.gov/documents/oplet/85-4.pdf (last visited Mar. 24, 2025).

[5] The Fund argues that if the Court disagrees with the arbitrator on the application of the prior partial credit, the Court should reach an issue "not reached by the arbitrator" and modify the final award to reflect the Fund's calculation of said credit. (Def.'s Mot., at 1853-1854). The Court declines the invitation to address any issues that were not considered by the arbitrator.

arbitration award, and remanding the case for further arbitration proceedings consistent with this decision.

**DATED**: April 3, 2025

**ENTERED**:

*LaShonda A Hunt*

LASHONDA A. HUNT
United States District Judge